HUGH STURGEON v. LEWIS H. MASON ET AL.

1. LEVY ON FOREIGN JUDGMENT MUST BE FOLLOWED BY APPRAISEMENT AND SALE.

Lien of foreign judgment is insufficient against subsequent liens if levy is not followed up by appraisement and sale.

2. SECOND EXECUTION DOES NOT KEEP JUDGMENT ALIVE.

Second execution while the first levy subsists is insufficient to prevent the judgment from becoming dormant.

3. WHEN FOREIGN JUDGMENT BECOMES DORMANT THE LIEN EXPIRES.

When a judgment becomes dormant the lien of a levy by execution on lands in a foreign county expires.

ERROR to the Court of Common Pleas of Crawford county.

The facts were substantially as follows:

On November 17, 1886, Lewis H. Mason took judgment on a *cognovit*, in the court of common pleas of Wyandot county, Ohio, for $5,018.95, against Michael Charlton and A. B. Charlton, the latter being surety. He caused execution to issue to the sheriff of Crawford county, who by direction of plaintiff's counsel levied upon 160 acres of Charlton's land now in question. The levy was recorded in the sheriff's foreign execution docket, and the writ returned "without further proceedings, by order of plaintiff's attorney."

On August 20, 1887, Michael Charlton and wife executed a mortgage to John Kirk for $1,251.00 on the same land, which was filed for record August 22, 1887, and was afterwards assigned to Hugh Sturgeon.

On April 6, 1888, Michael Charlton and wife executed to Hugh Sturgeon, a mortgage on the same land for $5,000.00, which was recorded the next day.

On November 7, 1891, Charlton's counsel, in order to prevent the Wyandot county judgment from becoming dormant, caused an *alias* execution to issue to the sheriff of Crawford county, which was levied anew on the same land, and the levy recorded in the sheriff's foreign docket, and returned "without further proceedings, by order of plaintiff's attorney."

Subsequently Michael Charlton made a general assignment for the benefit of his creditors, to J. C. F. Hull, who filed a petition to sell land to pay debts, in which he made Mason and Sturgeon parties, who filed cross-petitions on their liens, each claiming priority over the other.

The court of common pleas decided that Mason acquired a lien by his original levy, that his judgment had not become dormant for the reason that he kept it alive by causing a second execution to issue within five years from the recovery of the judgment, that the levy continued as a lien so long as the judgment did not become dormant, and that the second levy was not an abandonment of the first levy.

Cahill Bros., attorneys for Mason, cited: *Morgan v. Kinney*, 38 O. S., 610 ; *Kelly v. Vincent*, 8 O. S., 42.

R. V. Sears and Finley & Bennett, for Sturgeon, cited: *Arnold v. Fuller*, 1 O., 458; Gwynne on Sheriffs, 440; Freeman on Executions, sec. 206; *Ins. Co. v. McCreary*, 56 Ala. Rep.

S. R. Harris for defendant, A. B. Charlton, in whose favor the decree of the court of common pleas was affirmed.

MOORE, J.

As to the issues between Mason and Charlton the court reversed the decree below, and held in substance, that Sturgeon's mortgage had priority for two reasons:

I.   That the second execution was not a writ authorized by law, while the levy subsisted under the first execution.   The second writ should have been a *vende* or order to sell the land under the first levy.   The second writ being void, the judgment of Mason became dormant, his lien was lost and Sturgeon's mortgage became the first lien.

II.   That merely making a levy on the foreign execution, and ordering the same returned without further proceedings, did not secure a lien as against the subsequent mortgage of Sturgeon.